# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

NANCY GUENTHER and DONALD
GUENTHER,

                **Plaintiffs,**

**v.**                                             **Case No:  6:08-cv-456-Orl-31DAB**

NOVARTIS PHARMACEUTICAL
CORPORATION,

                **Defendant.**

_____

## ORDER

This matter comes before the Court after a hearing on the Motion for Summary Judgment (Doc. 65) filed the Defendant, Novartis Pharmaceutical Corporation ("Novartis"), the response (Doc. 69-1) filed by the Plaintiffs, Nancy Guenther and Donald Guenther, and the reply (Doc. 70) filed by Novartis.

### I.      Background

Nancy Guenther (henceforth "Guenther" or "Plaintiff") was diagnosed with breast cancer in February 1999, while living in Georgia.  In October 2001, her doctor found that it had metastasized to her bones.  In May 2002, she was prescribed Zometa by her oncologist, Dr. Miriam Atkins.  Zometa, which is produced and marketed by Novartis, is one of a number of phosphorous-containing drugs known as "bisphosphonates".  Novartis also produced and marketed, Aredia, an earlier-generation bisphosphonate.  Zometa and Aredia are prescribed to reduce the incidence of pathological fractures and other problems occurring in the bones of patients with certain types of cancer.

In June 2002, Guenther complained of tooth pain to her oncologist. During July 2002, she had a root canal.  In June 2004, she again complained of tooth pain to her oncologist, and she had another root canal.  In October 2004, her dentist noted an area of denuded tissue alongside the tooth that had undergone the most recent root canal, and she was diagnosed as having "avascular necrosis".  On her next visit to her oncologist, she was diagnosed with "osteonecrosis of the jaw" (henceforth, "ONJ"), a condition in which a portion of the jaw bone essentially dies.  Because of the ONJ, Atkins discontinued the Zometa treatment in January 2005.

In May 2005, after Guenther complained of back pain, Atkins restarted the Zometa treatment.  The next month, Guenther moved to Florida and began seeing a Florida oncologist, Dr. Kenneth Simon.  Simon continued the Zometa treatment.  Over time, Guenther experienced additional dental problems, including more necrotic bone and tooth loss.  Because of these problems, Guenther's oncologist discontinued the Zometa treatment in March 2006.  Since that time, Guenther has suffered additional necrotic bone and tooth loss.

On March 28, 2008, Guenther filed the instant suit, alleging that Zometa caused her to suffer osteonecrosis of the jaw, and that Novartis failed to, *inter alia*, provide proper warning of that risk.  She asserted claims against Novartis based on strict liability (Count I), negligent manufacturing (Count II), failure to warn (Count III), breach of express warranty (Count IV), and breach of implied warranty (Count V).  Her husband, Donald Guenther, filed a claim for loss of consortium (Count VI).  The case was transferred to a multidistrict litigation panel in May 2008 and remanded to this Court in September 2012.

## II.     Legal Standards

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56(c).  Which facts are material depends on the

substantive law applicable to the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the burden of showing that no genuine issue of material fact exists.  *Clark*

*v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a

dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving

party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to

interrogatories, and admissions on file, designate specific facts showing that there is a genuine

issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and

citation omitted).  Thereafter, summary judgment is mandated against the nonmoving party who

fails to make a showing sufficient to establish a genuine issue of fact for trial.  *Id.* at 322, 324-25.

The party opposing a motion for summary judgment must rely on more than conclusory

statements or allegations unsupported by facts.  *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986

(11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative

value").

The Court must consider all inferences drawn from the underlying facts in a light most

favorable to the party opposing the motion, and resolve all reasonable doubts against the moving

party.  *Anderson*, 477 U.S. at 255.  The Court is not, however, required to accept all of the non-

movant's factual characterizations and legal arguments.  *Beal v. Paramount Pictures Corp.*, 20

F.3d 454, 458-59 (11th Cir 1994).

### III.   Analysis

<u>Proximate Cause</u>

Though advanced under different legal theories, the first three counts of Guenther's

complaint – which assert strict liability, negligent manufacture, and negligent failure to warn

claims – all have, at their core, an alleged failure by Novartis to warn of the ONJ risk associated with Zometa.  To prevail on any of these three counts, Guenther must prove that the lack of such a warning was the proximate cause of her developing ONJ.

Guenther was initially prescribed Zometa by her oncologist in Georgia, Dr. Atkins, and her Florida oncologist, Dr. Simon, continued that treatment.  Both Florida and Georgia follow the learned intermediary doctrine, which provides that a prescription drug manufacturer's duty to warn runs to the prescribing health professional rather than the patient.  *See Rounds v. Genzyme Corp.*, 440 Fed. Appx. 753, 754-55 (11th Cir. 2011) (upholding application of learned intermediary doctrine under Florida law) *and McCombs v. Synthes*, 587 S.E.2d 2d 594, 595 (Ga. 2003) (interpreting learned intermediary doctrine under Georgia law).  Novartis argues that Guenther has no evidence that a different warning to either of these physicians would have altered their decision to prescribe Zometa (primarily because both of them continue to prescribe Zometa, despite now knowing of its attendant risks) and therefore she cannot establish that any failure to warn caused her to be injured.  However, the learned intermediary doctrine is based in part on a presumption that, once informed by the manufacturer, physicians will share the pertinent risks with his or her patient. Guenther has testified that if she had been warned by her oncologists about the risk of ONJ, she would have refused to take Zometa, and that she did stop taking the drug once she was told of that risk.  There is additional evidence rebutting Novartis on this point, such as expert testimony that physicians learning of the ONJ risk altered their prescribing practices and thereby reduced the risk of ONJ.  But Guenther's testimony is enough to create a genuine issue of material fact as to whether the allegedly insufficient warning was a proximate cause of her injury.

Novartis also argues that it had no duty at all to warn Dr. Atkins, as the risk of ONJ was unknown in May 2002, when Dr. Atkins initially prescribed Zometa.  However, Guenther points

to evidence that the risk was known or should have been known to Novartis by that time.  Such

evidence includes a 1981 article by Gotcher and Jee discussing dead bone found in rats given a

bisphosphonate during an experiment, which article was in the possession of one of Novartis's

medical researchers by 1986.  In addition, Guenther has presented expert testimony that at least six

cases of ONJ developed during the clinical trials for Aredia and Zometa.  Again, there is other

evidence upon which Guenther seeks to rely, but this is enough to demonstrate that there is a

genuine issue of material fact as to what information was available to Novartis when Guenther

began taking Zometa.

> Presumption of no liability

Florida Statute § 768.1256(1) provides that

> In a product liability action brought against a manufacturer or seller
> for harm allegedly caused by a product, there is a rebuttable
> presumption that the product is not defective or unreasonably
> dangerous and the manufacturer or seller is not liable if, at the time
> the specific unit of the product was sold or delivered to the initial
> purchaser or user, the aspect of the product that allegedly caused the
> harm:
>
> (a) Complied with federal or state codes, statutes, rules, regulations,
> or standards relevant to the event causing the death or injury;
>
> (b) The codes, statutes, rules, regulations, or standards are designed
> to prevent the type of harm that allegedly occurred; and
>
> (c) Compliance with the codes, statutes, rules, regulations, or
> standards is required as a condition for selling or distributing the
> product.

Novartis argues that it is entitled to this presumption, in that Zometa and its label have

always had the required FDA approvals.  Assuming *arguendo* that this Florida statutory

presumption would also apply to a product administered in Georgia to a Georgia resident, and that

Novartis is entitled to the presumption, the presumption is by its terms rebuttable.  As noted

above, Guenther has produced evidence from which a reasonable jury could conclude that

Novartis knew or should have known of the risk of Zometa causing ONJ prior to May 2002, when Guenther began taking it, and failed to include that information in the packaging. The Multi-District Litigation court found that such evidence was sufficient to preclude summary judgment as to the Florida plaintiffs' ability to rebut the statutory presumption, *see In re Aredia and Zometa Products Liability Litigation*, 2010 WL 813459 (M.D.Tenn. Mar. 3, 2010), and this Court sees no reason to reassess that ruling.

<u>Medical Causation</u>

Novartis argues that Guenther has no admissible evidence that Zometa caused her to suffer osteonecrosis of the jaw because the testimony she seeks to introduce through her non-retained experts – specifically, two oncologists and two dentists – is inadmissible. Novartis filed a motion in limine (Doc. 63) to exclude their testimony; however, the Court has denied that motion. (Doc. 105). Accordingly, Novartis is not entitled to summary judgment on this point.

<u>Defective Design Claim</u>

In her first two counts, Guenther alleges that Zometa was defectively designed. Novartis argues that it is entitled to summary judgment as to any defective design claims based on Florida's adoption of comment k to Section 402A of the Restatement (Second) of Torts. Section 402A, titled "Special Liability of Seller of Product for Physical Harm to User or Consumer," sets forth the general standard for strict liability:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> (a) the seller is engaged in the business of selling such a product, and
>
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Comment k to this section encompasses products whose benefits generally outweigh their (unavoidably high) risks but are "incapable of being made safe for their intended and ordinary use." *Id.* Such products are neither defective nor unreasonably dangerous, and sellers of such products cannot be held strictly liable, so long as the products are properly prepared and "accompanied by proper directions and warning." *Id.* In this case, the sufficiency of the directions and warning accompanying Zometa are clearly in dispute. As such, Novartis is not entitled to summary judgment on this issue.

<u>Breach of Warranty Claims</u>

Novartis argues that it is entitled to judgment on Guenther's warranty claims (Counts IV and V) because she was not in privity with the Defendant. Under Florida law, a plaintiff must be in privity of contract to recover under theories of breach of express or implied warranties. *Fields v. Mylan Pharmaceuticals, Inc.*, 751 F. Supp. 2d 1257, 1259 (N.D. Fla. 2009). Guenther contends that Florida has "abandoned privity in cases like this," citing to *McCarthy v. Florida Ladder Company*, 295 So. 2d 707 (Fla. 2d DCA 1974). In *McCarthy*, the court held that "the doctrine of privity no longer obtains in Florida in an implied warranty suit by a consumer against a manufacturer." *Id.* at 709. However, *McCarthy* predated Florida's adoption, in *West v. Caterpillar Tractor Co.*, 336 So. 2d 80 (Fla. 1976), of the doctrine of strict liability in tort in products liability cases. The adoption of the doctrine of strict liability "abolished the no-privity, breach of implied warranty cause of action for personal injury". *Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37, 39 (Fla. 1988). Novartis is entitled to summary judgment on Counts IV and V.

<u>Loss of Consortium Claim</u>

Donald Guenther's claim for loss of consortium is necessarily derivative of his wife's claims.  Novartis argues that because it is entitled to summary judgment on her claims, it is also entitled to summary judgment on his claim.  Because some of his wife's claims have survived summary judgment, Novartis's argument on this point must fail.

In consideration of the foregoing, it is hereby

**ORDERED AND ADJUDGED** that the Motion for Summary Judgment (Doc. 65) is **GRANTED IN PART AND DENIED IN PART**.  Counts IV and V are **DISMISSED WITH PREJUDICE**.  In all other respects, the motion is denied.


**DONE** and **ORDERED** in Orlando, Florida on April 9, 2013.


Copies furnished to:

Counsel of Record
Unrepresented Parties