IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| NANCY GUENTHER, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 6:08-cv-456-Orl-31DAB |
| v. ) | |
| ) | |
| NOVARTIS PHARMACEUTICALS CORP., ) | |
| ) | |
| Defendant. ) | |

## NOVARTIS PHARMACEUTICALS
## CORPORATION'S REPLY IN SUPPORT OF MOTION *IN LIMINE*

In accordance with leave granted by the Court at the July 31, 2013 pretrial conference, Novartis Pharmaceuticals Corporation ("NPC") hereby files this reply in support of its Motion *in Limine* ("NPC MIL") (ECF No. 162).[1]

**Rat Study Published in 1981**  Plaintiffs present no persuasive reason for this Court to admit the 1981 article about periodontal disease in rats treated with clodronate (a non-nitrogen-containing bisphosphonate, unlike Zometa® or Aredia®). Dr. Marx repeatedly has given testimony that destroys their arguments about this article, *see* NPC MIL at 3-4, and the suggestion that he has softened his position slightly in a recent trial, *see* Pls.' Opp'n at 5 – presumably after he was taken to the woodshed – does not make this article admissible. In the only Zometa® trial conducted in Florida (the *Chiles* trial), Judge Adams excluded this article, and federal courts have excluded it in other Zometa® trials. *See* NPC MIL at 2 & n.3.

---

[1] Plaintiffs' Opposition (ECF No. 175) is full of unsupported "closing argument" rhetoric – akin to the closing arguments that plaintiffs made at the pretrial conference. In the interest of brevity, NPC does not provide a point-by-point rebuttal here to plaintiffs' erroneous arguments. The lack of such rebuttals is not a concession that plaintiffs' arguments are well-founded.

This Court should do so as well.[2]

**Phossy Jaw** Plaintiffs' phossy jaw arguments also lack merit. Phossy jaw is ***not*** addressed in a single sentence of Dr. Marx's 62-paragraph expert report, *see* ECF No. 172-1, so plaintiffs failed to provide the requisite expert witness disclosure regarding this issue. The citations to a phossy jaw article in the references list (and another article in the "Materials Reviewed" list), *see id*. at 15, 101, do not satisfy Federal Rule of Civil Procedure 26(a)(2)(B) or this Court's disclosure requirements, *see* Case Management Order at 4 (ECF No. 37).

Moreover, the chemistry expert identified by the Plaintiffs' Steering Committee in the MDL proceedings (and also identified in the New Jersey state court Zometa® litigation) for the specific purpose of trying to link phossy jaw and osteonecrosis of the jaw ("ONJ") – Paul Hanson, Ph.D. – was excluded by the New Jersey court after an evidentiary hearing: "In the absence of any scientifically supported link between ONJ and 'phossy jaw,' Prof. Hanson's testimony must be excluded." *Bessemer v. NPC*, No. MID-L-1835-08, slip op. at 10 (N.J. Super. Ct. Law. Div. Apr. 30, 2010) (Ex. 2); *see also id*. at 10-11 (rejecting as "unreliable" Prof. Hanson's attempt to "draw a chemical analogy between white phosphorus smoke produced in matchstick factories in the 19th century and modern-day bisphosphonates, such as Zometa®"). After that ruling, plaintiffs did not identify Dr. Hanson in this case, and they have no other chemistry expert to address phossy jaw. In these circumstances, the Court should not allow them to fill the gap with convoluted testimony by Dr. Marx that will

---

[2] Plaintiffs exaggerate the significance of this rat study, making the surprising assertion that the article "was a familiar and inextricable part of [Dr. Jonathan Green's] work in designing the trials of both Aredia and Zometa," Pls.' Opp'n at 5-6. That grotesquely misrepresents the facts. Dr. Green was deposed, but plaintiffs fail to cite his deposition – presumably because his limited testimony about this article does not even come close to what plaintiffs assert in their opposition. *See* Dep. Tr. of Jonathan Green at 126-27 (Ex. 1). This article is significant here only because plaintiffs make it a key part of their misleading, hindsight-based arguments.

mislead the jury, waste time, and unfairly prejudice NPC. *See* NPC MIL at 5 & n.6 (citing case law excluding phossy jaw evidence).

**Osteopetrosis** The genetic disorder osteopetrosis is so far-removed from any relevant issue that the Court should exclude evidence and argument about osteopetrosis. Even if the Court does not issue that across-the-board ruling, the Court should preclude Dr. Parisian from testifying about osteopetrosis – as occurred in recent Zometa® trials: the *Hill* case, *see* NPC MIL at 7 n.7, and the *Davids* case, *see id.*; 10/16/12 Trial Tr. at 1308-16 (precluding Dr. Parisian from addressing osteopetrosis or Carsten Goessl's e-mail) (Ex. 3); 10/18/12 Trial Tr. at 1607-11 (re-affirming preclusion ruling re Dr. Parisian) (Ex. 4).

**Pre-emption as to Certain Issues Controlled by FDA** Plaintiffs misconstrue *Wyeth v. Levine*, 555 U.S. 555 (2009), and more recent preemption rulings in prescription drugs cases, *see Mutual Pharm. Co. v. Bartlett*, 133 S. Ct. 2466 (2013); *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011). Plaintiffs also mischaracterize NPC's arguments. NPC does not attempt to "reverse *Wyeth*," Pls.' Opp'n at 2, but rather asks the Court to preclude plaintiffs from presenting evidence and argument about certain, narrow issues that are controlled by the FDA. NPC's arguments are not contrary to *Wyeth*, which focused on whether federal law preempts "Levine's claim that Phenergan's label did not contain an adequate warning about using the IV-push method of administration," *Wyeth*, 555 U.S. at 565.

For example, *Wyeth* does ***not*** address "black box" warnings, and plaintiffs have failed to rebut NPC's showing that the FDA does not allow companies to add black box warnings to prescription drug package inserts without prior FDA approval, *see* NPC MIL at 8-9.[3]

---

[3] If plaintiffs try to contend that NPC should have taken steps to add a black box warning to the Zometa® package insert by asking the FDA to allow that revision, that argument is foreclosed by the Supreme Court's

3

Likewise, the *Wyeth* ruling does not address labeling changes to reduce the FDA-approved dose of a prescription drug or to reduce the duration of use. Those kinds of labeling revisions also require prior FDA approval, because, as the Supreme Court stated in its most recent prescription drug preemption ruling, "[o]nce a drug – ***whether generic or brand-name*** – is approved, the manufacturer is prohibited from making any changes to the 'qualitative or quantitative formulation of the drug product, including active ingredients, or in the specifications provided in the approved application,'" *Bartlett*, 133 S. Ct. at 2471 (quoting 21 C.F.R. § 314.70(b)(2)(i)) (emphasis added).

Plaintiffs also miss the mark by arguing that NPC was free to make revisions – without prior FDA approval – to the Zometa® package insert to compare the safety of Zometa® and Aredia®. Again, the *Wyeth* ruling does not address this issue. Although plaintiffs note that the Zometa® package insert already included certain information about how Zometa® compared to Aredia®, *see* Pls.' Opp'n at 10, that misses the point. Those comparisons address data from clinical trials that were submitted to the FDA for approval of Zometa® (and that were designed as non-inferiority trials for certain patient populations where Aredia® was already FDA-approved, so it would have been unethical to do a placebo-controlled trial with those patients by depriving them of Aredia®). Plaintiffs' assertion that NPC had "*carte blanche*," *id*., to put comparative safety information on the Zometa® package insert after the ONJ issue came to light is incorrect. Adding such comparative safety

---

ruling in *Mensing*, 131 S. Ct. at 2578-79. The *Mensing* Court held that such an argument would "render conflict pre-emption largely meaningless because it would make most conflicts between state and federal law illusory." *Id*. at 2579. Thus, the issue is "whether the private party could ***independently*** do under federal law what state law requires of it." *Id*. (emphasis added). Because federal law precluded NPC from adding a black box warning to the Zometa® package insert independently – *i.e.*, without prior FDA approval – plaintiffs are precluded from making any black-box-warnings arguments in support of their state law tort claims in this case.

statements would require prior FDA approval and data from adequate, well-controlled studies, *see* NPC MIL at 11 & n.13 (citing FDA regulations), but there are no such studies – and plaintiffs do not cite any in their opposition.

Plaintiffs' arguments about label format changes also lack merit. The *Wyeth* ruling does not address this issue. Plaintiffs' assertion that the *Pom Wonderful* ruling is inapposite, *see* Pls.' Opp'n at 10, is directly contrary to the recent *Hill* preclusion ruling that applied *Pom Wonderful* to this exact issue in another Zometa® lawsuit, *see* NPC MIL at 13.

Plaintiffs do not contest NPC's *Buckman*-based preemption argument regarding alleged failures to comply with FDA reporting obligations, *see* NPC MIL at 13-14, so the Court should preclude plaintiffs from presenting evidence or argument regarding that issue.

**Scope of Duty to Warn; Learned Intermediary Doctrine** Plaintiffs' cursory response regarding the scope of NPC's duty to warn lacks merit. They cite two cases (one from Kentucky and one from New York, applying Rhode Island law), *see* Pls.' Opp'n at 10, but no cases applying ***Florida*** law. By contrast, NPC cited Florida cases, including the Eleventh Circuit's recent *Guarino* opinion, to show that Florida's version of the learned intermediary doctrine required NPC to warn only prescribing physicians. *See* NPC MIL at 17 & n.20; *see also Levine v. Wyeth Inc.*, 684 F. Supp. 2d 1338, 1344 (M.D. Fla. 2010).

Moreover, plaintiffs have no response to NPC's arguments – based on Dr. Marx's unequivocal testimony – that the Court should preclude them from presenting evidence or arguments about any alleged failures to: (a) warn about avoiding invasive dental procedures; or (b) recommend a pre-Zometa®-therapy dental examination. *See* NPC MIL at 14-16. That part of NPC's motion should be granted based on the specific facts of this case.

5

Finally, plaintiffs mischaracterize the *Guarino* ruling. *See* Pls.' Opp'n at 11.  That ruling makes clear that the Zometa® package insert is the only place where NPC was required to warn about ONJ.  *See Guarino v. Wyeth, LLC*, 719 F.3d 1245, 1250 (11th Cir. 2013) ("'Pharmaceutical manufacturers discharge their duty to warn the learned intermediary by way of a package insert which accompanies [their products].'" (quoting *E.R. Squibb & Sons, Inc. v. Farnes*, 697 So. 2d 825, 827 (Fla. 1997))).  Thus, the Court should preclude plaintiffs from arguing otherwise at trial.

Dated:  August 9, 2013	Respectfully submitted,

Michael J. Thomas	/s/ Donald W. Fowler
(mike@penningtonlaw.com)	Donald W. Fowler (admitted *pro hac vice*)
Florida Bar No. 897760	(dfowler@hollingsworthllp.com)
 PENNINGTON, P.A.	Martin C. Calhoun (admitted *pro hac vice*)
 215 South Monroe St., 2nd Floor	(mcalhoun@hollingsworthllp.com)
 Tallahassee, FL 32301	 HOLLINGSWORTH LLP
 (850) 222-3533	 1350 I Street, NW
 (850) 222-2126 (fax)	 Washington, D.C. 20005
	 (202) 898-5800
	 (202) 682-1639 (fax)

*Attorneys for Defendant Novartis Pharmaceuticals Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 9th day of August 2013 served a true and correct copy of the foregoing reply, by operation of the Court's Electronic Case Filing System, on the following:

John J. Vecchione, Esq.
Valad & Vecchione, PLLC
3863 Plaza Drive, Suite 200
Fairfax, VA  22030
(703) 352-4800

Ramon A. Rasco, Esq.
Podhurst Orseck, P.A.
City National Bank Building
25 West Flagler Street, Suite 800
Miami, FL  33130
(305) 358-2800

/s/ Donald W. Fowler
Donald W. Fowler (admitted *pro hac vice*)
(dfowler@hollingsworthllp.com)
Martin C. Calhoun (admitted *pro hac vice*)
(mcalhoun@hollingsworthllp.com)
  HOLLINGSWORTH LLP
  1350 I Street, NW
  Washington, D.C. 20005
  (202) 898-5800
  (202) 682-1639 (fax)

*Attorneys for Defendant Novartis Pharmaceuticals Corporation*