**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**NANCY GUENTHER and DONALD GUENTHER,**

      **Plaintiffs,**

**v.**                                                    **Case No: 6:08-cv-456-Orl-31DAB**

**NOVARTIS PHARMACEUTICAL CORPORATION,**

      **Defendant.**

## ORDER

This matter comes before the Court after a hearing on July 31, 2013 on the Plaintiffs' Omnibus Motion in Limine (Doc. 147) and the response in opposition (Doc. 159) filed by the Defendant, Novartis Pharmaceutical Corporation ("Novartis"). Familiarity with the background of this case is assumed.

### I.    Background

Nancy Guenther was diagnosed with breast cancer in February 1999. In October 2001, her doctor found that the cancer had metastasized to her bones. In May 2002, she was prescribed Zometa by her oncologist. Zometa, which is produced and marketed by Novartis, is prescribed to reduce the incidence of pathological fractures and other problems occurring in the bones of patients with certain types of cancer.

After she began taking Zometa, Nancy Guenther began to suffer a number of dental problems, ranging from tooth pain to osteonecrosis of the jaw, a condition in which a portion of the jaw bone essentially dies. On March 28, 2008, the Plaintiffs filed the instant suit, alleging that

Zometa caused Nancy Guenther to suffer osteonecrosis of the jaw, and that Novartis failed to, *inter alia*, provide proper warning of that risk. Nancy Guenther asserted claims against Novartis based on strict liability (Count I), negligent manufacturing (Count II), failure to warn (Count III), breach of express warranty (Count IV), and breach of implied warranty (Count V). Her husband, Donald Guenther, filed a claim for loss of consortium (Count VI). The case was transferred to a multidistrict litigation panel in May 2008 and remanded to this Court in September 2012.

### II. Legal Standard

Broadly speaking, a motion in limine may be defined as a request, generally made before a trial has begun, "to exclude anticipated prejudicial evidence before it is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). Although in limine rulings are not binding on a trial court and remain subject to reconsideration during the trial itself, *id.* at 41-42, motions in limine provide notice to the trial judge of the movant's position so as to avoid the introduction of damaging evidence, which may irretrievably affect the fairness of the trial, *Stewart v. Hooters of America, Inc.*, 2007 WL 1752873 (M.D.Fla. June 18, 2007). A pretrial motion in limine may also have the salutary effect of reducing the number of interruptions during the trial itself. *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990).

While the list is not exhaustive, courts generally recognize that a motion in limine is proper where:

> (1) the trial court has directed that evidentiary issue be resolved before trial; (2) the evidentiary material is highly prejudicial or inflammatory and would risk mistrial if not previously addressed by the trial court; (3) the evidentiary issue is significant and unresolved under the existing law; (4) the evidentiary issue involves a significant number of witnesses or substantial volume of material making it more economical to have the issue resolved in advance of the trial so as to save time and resources of all concerned; or (5) the party does not wish to object to the evidence in the presence of the

> jury and thereby preserves the issue for appellate review by obtaining an unfavorable ruling via a pretrial motion in limine.

75 Am. Jur. 2d Trial § 39.

Unless the evidence is clearly inadmissible on all possible grounds, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context. *See generally* 21 FED. PRAC. AND PROC. EVIDENCE § 5037.10 (2d ed.). A ruling in limine does not "relieve a party from the responsibility of making objections, raising motions to strike or making formal offers of proof during the course of trial." *Thweatt v. Ontko*, 814 F.2d 1466, 1470 (10th Cir.1987).

**III.   Analysis**

  A.   Zometa Benefits

The Plaintiffs seek to preclude Novartis from offering any evidence or commentary about purported benefits of Zometa other than those that had been approved by the FDA for inclusion on the drug's label at the time Nancy Guenther was taking it. The Plaintiffs assert that Zometa's only approved use at that time was to reduce a cancer patient's chance of suffering a so-called "skeletal-related event" ("SRE"). Because of this, they argue that Novartis should not be allowed to describe it as a "cancer drug" or a "miracle drug" that prolongs the lives of cancer patients. However, the Plaintiffs' argument is overbroad. At this point, the Court cannot say with certainty that Zometa's off-label uses are necessarily irrelevant. And it does not appear to be unduly misleading or prejudicial to refer to a drug routinely prescribed to cancer patients as a "cancer drug". As to this point, the motion will be denied.

  B.   Benefits Offset

Novartis argues that the benefits resulting from Guenther's use of Zometa should be offset against any negligence on its part. Courts have long recognized that tortfeasors sometimes cause

not just damages but benefits to their victims, and under certain circumstances those benefits should be taken into consideration in calculating the compensation to which the victim is entitled. For example, the Restatement (Second) of Torts provides

> When the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred a special benefit to the interest of the plaintiff that was harmed, the value of the benefit conferred is considered in mitigation of the damages, to the extent that this is equitable.

Restatement (Second) of Torts § 920 (1979).[1]

The issue tends to arise most often in the context of so-called "wrongful births," where the negligence of someone such as a medical professional results in the plaintiff giving birth despite efforts to avoid doing so. In such cases, courts sometimes offset the benefits of parenthood against the damages caused by the negligence. *See*, *e.g.*, *Phillips v. United States*, 575 F.Supp. 1309 (D.S.C. 1983) (where medical facility failed to advise expectant parents of risk of having child with Down's Syndrome or to test for the condition, parents were entitled to recover costs of raising child with the condition and compensation for their own mental anguish, but compensation for mental anguish would be reduced by half to account for emotional benefit of having a child). However, the principle is not limited to this category of cases, and at least one of the illustrations provided by the drafters of Section 920 at least arguably resembles the situation here:

> A, a surgeon, without B's consent, operates upon B's eye, causing B to lose the sight in that eye. In an action of battery, it may be shown in mitigation of damages for the loss of the eye that had A not operated, the sight of the other eye would have been lost.

Restatement (Second) of Torts § 920 ill. 2.

Although this is not a battery case, the arguments advanced by the parties here are similar to those described in illustration 2 above. Nancy Guenther is arguing that she would not have

---

[1] The original Restatement had essentially identical language. *See* Restatement of Torts § 920 (1939).

consented to take Zometa if she had been properly warned of its dangers, while Novartis seeks to introduce evidence of medical harm she would have suffered but for taking the drug. At this stage of the proceedings, the Court cannot say with certainty that Section 920 of the Restatement (Second) cannot apply. Accordingly, this portion of the Plaintiffs' motion will be denied.

### C. Expert identification

On its witness lists, Novartis has identified a number of retained experts in the same subject areas such as oncology and oral surgery. The Plaintiffs ask that the Court prohibit Novartis from offering testimony from more than one expert in the same subject area and to require Novartis to identify which specific expert in each field it intends to call at trial. Because experts testifying in the same subject area are not necessarily duplicative of one another, the first part of the Plaintiffs' request will be denied. (The Court will determine at trial whether any of the proposed testimony is unnecessarily cumulative.) In regard to identification, as the Court announced at the pre-trial conference, both parties must specify the experts they intend to call at trial 21 days before it begins.

### D. Plaintiffs' personal history

The Plaintiffs argue that it would be unduly prejudicial for Novartis to introduce evidence of: (1) an alleged marital separation in the late 1980s; (2) alleged alcohol abuse on the part of Mrs. Guenther; and (3) a syphilis test allegedly taken by Mrs. Guenther. As the alleged separation could be relevant to the loss of consortium claim, the motion will be denied as to that issue. Similarly, it remains an open question as to whether alcohol abuse could cause at least some of the dental issues that Mrs. Guenther contends were caused by Zometa, so the motion will also be denied as to that issue. As to the (alleged) syphilis test, counsel for Novartis announced at the

pretrial conference that the company would not seek to introduce any evidence of it at trial. Accordingly, that portion of the Plaintiffs' motion will be denied as moot.

### IV.    Conclusion

In consideration of the foregoing, it is hereby

**ORDERED AND ADJUDGED** that the Plaintiffs' Omnibus Motion in Limine (Doc. 147) is **GRANTED IN PART AND DENIED IN PART** as set forth above.

**DONE** and **ORDERED** in Orlando, Florida on August 16, 2013.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties